IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JAMES ALAN BARNES,<br>　　　Plaintiff<br><br>v.<br><br><br>RELIANCE STANDARD LIFE<br>INSURANCE COMPANY,<br>　　　Defendant | § § § § § § § § § § § | CIVIL ACTION NO.<br>2:23-cv-101 |

### Plaintiff's Original Complaint

Reliance Standard life Insurance Company (Reliance) wrongfully terminated the long-term disability (LTD) benefits of James Alan Barnes.

### I. Parties

1. Plaintiff James Barnes is a resident of Corpus Christi, Nueces County, Texas.

2. Defendant Reliance is an insurance company doing business in Texas. Reliance was the underwriter of the group disability policy insuring employees of The Vertex Companies, Inc., including James Barnes. In addition to being the underwriter of benefits, Reliance was the fiduciary who decided to terminate Barnes' LTD benefits. Reliance can be served with citation by serving its registered agent for service of legal process CT Corporation System, 1999 Bryan St., Suite 900, Dallas, Texas 75201-3136.

1

## II. JURISDICTION AND VENUE

3. This lawsuit is a claim for disability benefits provided by an ERISA welfare benefit plan brought under 29 U.S.C. §1132(a)(1)(B). This court has jurisdiction over this claim for disability benefits under 29 U.S.C. §1132(e)(1) of the Employee Retirement Income Security Act of 1974 ("ERISA"). Venue is proper in the Southern District of Texas, Corpus Christi Division, in accordance with 29 U.S.C. 1132(e)(2) as the disability benefit payment obligations under the plan are to Barnes at his home in Corpus Christi, Texas.

## III. STATEMENT OF FACTS

4. Prior to becoming disabled, James Barnes was Vice President of The Vertex Companies, Inc. He began working for Vertex in Dallas in 2012. Vertex is an engineering firm specializing in claims evaluation for insurance companies, civil and industrial design, construction claims, litigation support, and environmental work. Barnes' work responsibilities included engineering field work and sales, including developing and maintaining client relationships.

5. Barnes endured a number of surgeries but continued to work and support his family, including a left wrist surgery, various tendon repairs, two ankles surgeries (braxton procedures), cervical bilateral ulnar nerve transposition, cervical disc arthroplasty with hardware implantation in 2018, repair of torn labrum muscle and rotator cuff (left shoulder) in 2018, and partial left knee replacement in 2018. The problems with his cervical spine, left knee, and

shoulder were the result of injuries from an accident in 2016 and subsequent arthritic degeneration.

6. On March 10, 2020, Barnes underwent a second left knee replacement due to osteoarthritis in his left knee. He did not recover as expected. His mobility and ability to stand was limited to the degree that he required a walker. At the same time, he began to experience severe pain in his neck and shoulder and back, and also left-sided weakness. His treatment providers felt that the neck pain was being caused by a displacement of the hardware in his cervical spine.

7. Barnes was not able to return to work. After steroid injections in his cervical spine failed, in September 2020 he underwent another cervical spine surgery with the implantation of more hardware: an anterior cervical discectomy and fusion. However, the surgery did not alleviate his chronic pain.

8. Despite the use of strong narcotic pain medications prescribed by his pain management physician, Barnes has remained unable to work since his last day of work on March 9, 2020. Due to chronic pain in his back, neck and knee, he is lucky to sleep four hours in a night. In addition to chronic pain syndrome, he suffers from complex regional pain syndrome of his left lower extremity and knee. Even the slightest pressure on his left leg causes intense pain. He is unable to wear pants because of the pain caused by pants rubbing against his skin.

9. By virtue of his employment with Vertex, Barnes had short and long-term disability coverage. His short-term disability (STD) benefits were administered by Matrix Absence Management and his long-term disability (LTD)

benefits are provided under a group policy insuring Vertex employees that is underwritten by Reliance. The benefits are coordinated so that STD benefits are paid for a maximum period of 180 days, and if a plan participant is not able to return to work due to injury or illness, the benefits transition to LTD benefits. The LTD benefits are paid after a 180-day waiting period, the period during which STD benefits are paid.

10. Matrix found Barnes disabled and paid him STD benefits for the maximum period of 180 days (from March 10, 2020 through September 9, 2020). Then Reliance approved his claim for LTD benefits, beginning September 10, 2020.

11. Reliance paid Barnes LTD benefits for the period from September 11, 2020 through September 6, 2022. During the time that Barnes was receiving LTD benefits, he was advised by Reliance that he was a good candidate for Social Security Disability Income (SSDI) benefits due to his severe impairments and ongoing chronic pain. Like most group disability policies, the Reliance policy requires a claimant receiving LTD benefits to apply for disability benefits from the Social Security Administration (SSA). The reason for this requirement, and the reason that the adjustors prod LTD recipients like Barnes to apply for SSDI benefits, is that an SSDI benefit reduces, dollar for dollar, the disability benefit that the insurer is required to pay under the policy.

12. Barnes applied for SSDI benefits and was promptly approved. The Social Security Administration found him disabled under their rules as of July 20,

2020. Barnes notified Reliance of his SSDI approval and a back benefit award from the SSA. Reliance promptly sent him an overpayment letter, seeking to collect for the overpayment that resulted from his SSDI approval. Reliance applied the LTD benefits during the period for which they were approved (9/6/21 to 8/6/22) to satisfy the overpayment. The overpayment has been satisfied in full.

13. The definition of disability in the Reliance LTD policy changes after 24 months, as is common with group disability insurance policies. The first period is often called the "own occupation" period of disability. The period after the first 24 months of LTD benefit payments is often called the "any occupation" period. Reliance terminated benefits at the advent of the any occupation period (beginning September 7, 2022). In a letter dated August 3, 2022, Reliance asserted that it was terminating policy benefits because, it alleged, Barnes was capable of performing other full-time occupations as of September 7, 2022 and thereafter.

14. Barnes timely appealed Reliance's adverse benefit determination. He and his wife Diana Barnes explained why he could no longer work at any full-time occupation. His wife summarized his day-to-day life and his severe impairments:

> "...(My husband James) suffers from lower back, neck, shoulder complex regional pain syndrome in his left leg and right knee is damaged from his multiple replacement procedures. He is in constant pain and cannot walk without the use of an assistive device (cane or walker mostly used in the home) for more than a few feet. He has difficulty sleeping because of his pain and cannot find a position that is comfortable to sleep in. His leg is painfully stuck from scar tissue at a very uncomfortable degree or angle-he cannot bend it any further and cannot straighten it any further either.
>     He needs assistance stepping over any ledges into our

shower, stairs, requires assistance bathing, and putting on clothing as he cannot bend his leg, his neck aches, and he has balance issues. I have witnessed him fall numerous times and/or due to weakness lose his balance and it is difficult and scary to predict when his next fall will be.
  The medicines he's required to take make him very dizzy, tired, and often unable to interact with the family. He even has difficulty going to the restroom (and asked for my help) because of his lack of balance and I am sure from the side effects from his prescription medication..."

15. In addition, with his appeal Barnes provided a written opinion from his pain management physician. His pain management physician indicated that Barnes remained unable to perform any full-time occupation due to complex regional pain syndrome of the left lower limb, chronic pain syndrome, inability to sit, stand, or walk for long periods of time, and lack of mobility (inability to straighten out his leg).

16. Also, in his appeal Barnes emphasized that he had been approved for SSDI benefits by the SSA. The definition of disability for SSDI benefits, established by statute, is like the definition of disability under review by Reliance: an any occupation definition. Barnes pointed out that the SSA has great expertise in determining disability and substantial weight should be given to the Government's decision.

17. Once the appeal was submitted, Reliance passed the claim file to a consultant who is paid to review medical charts and provide opinions of disability to group insurance carriers such as Reliance. The consultant opined that Barnes was not sufficiently impaired to be disabled from performing a full-time

occupation. Barnes was sent the report and was given a limited time to respond (two weeks). Barnes requested extensions so that he would have time to see his pain management physician and his physician could respond to the report. He reminded Reliance that he had no health insurance for over a year, so his ability to receive treatment (other than the necessary pain management, which he paid for out of pocket) was limited until he became insured under Medicaid as of January 2023.

18. Reliance approved the first request for extension of two weeks but denied the second request for an additional two weeks. Reliance maintained that the time requirements for responding to the appeal (the requirements established by the U.S. Department of Labor) would not allow another extension. This statement was false, as Barnes agreed to suspend any time requirements for Reliance to make a decision on appeal while he gathered rebuttal evidence to respond to the consultant's report. Since evidence generated after a final denial is prohibited under established ERISA benefits law, allowing a claimant a full dialogue during the appeals process is essential to a fair review.

19. Although Barnes was not given ample time to have his pain physician respond to the consultant's report, he did respond by the deadline imposed by Reliance, reiterating that Reliance's termination of benefits had no merit.

20. Despite the clear evidence that Barnes was not able to perform any full-time occupation as of September 7, 2022 and thereafter, Reliance denied Barnes appeal by letter dated March 10, 2023. In summary, Reliance again determined

that Barnes was not disabled from any occupation as of September 7, 2022 and thereafter. Reliance advised Barnes that its decision was final and his only available recourse, if he disagreed, was to file suit under 502(a) of ERISA.

**Exhaustion of Appeal Requirements**

21. Barnes exhausted the administrative appeal requirements of the policy by virtue of his timely appeal and therefore can bring this suit for benefits.

**Reliance's Decision to Terminate Benefits Was Contrary to the Preponderance of the Evidence Or Was an Abuse of Discretion**

22. Even if there is language in the policy or plan-related documents that is interpreted to grant Reliance discretion to make benefit determinations under the policy, these discretionary provisions are unenforceable as to Barnes' claim because it is a violation of Texas law to seek enforcement of a discretionary clause in a disability policy against an insured living in Texas. Texas Insurance Code, §1701.062, and 28 Texas Administrative Code §§3.1201-3.1203. This anti-discretionary statute and its accompanying regulations are not preempted by ERISA.

23. Reliance's decision to terminate Barnes' LTD benefits should be overturned by the Court, as it was contrary to the preponderance of the evidence. The greater weight of the evidence within the record proves that Barnes met the policy's definition of disability.

24. In the unlikely event that Reliance is found to have discretionary authority so that this matter is reviewed under an abuse of discretion standard of review, Reliance abused its discretion in terminating Barnes' LTD benefits.

25. Since Reliance's decision to terminate Barnes' LTD benefits resulted in Reliance saving money, as the carrier is both the decision-maker and the underwriter of benefits, Reliance acted under a conflict of interest when it decided to terminate his benefits and denied his appeal. If abuse of discretion is determined to be the proper standard of review, this conflict of interest should be considered as a factor by this Court in determining whether Reliance abused its discretion in terminating Barnes' LTD benefits.

## IV. CAUSE OF ACTION UNDER ERISA

### Claim for Disability Benefits

26. Barnes seeks to recover LTD benefits due him under the policy under the authority of 29 U.S.C. 1132(a)(1)(b) of ERISA.

## V. RELIEF REQUESTED

27. The policy entitles Barnes to 60% of his pre-disability earnings, less the SSDI benefits that he and his dependents are entitled to receive as a result of his disability. Barnes' pre-disability monthly earnings were approximately $13,228.43. Sixty percent of $13,228.43 is $7937.06. The SSDI benefits that he and his dependents are entitled to receive is approximately $4548. As a result, Barnes is entitled to LTD benefits in the amount of $3389.06 beginning September 6, 2022 ($7937.06-$4548). As of June 6, 2023, Barnes is entitled to the sum of

$30,501.54 ($3389.06 x 9 months) and is entitled to additional benefits of $3389.06 per month after June 6, 2023.

## VI. <u>ATTORNEY'S FEES</u>

28. Barnes requests his attorney's fees and costs under 29 U.S.C.A. 1132(g).

## <u>CONCLUSION</u>

Barnes requests LTD benefits at the rate of $3389.06 per month from September 6, 2022 until the date of judgment, his attorney's fees, pre-judgment interest at the maximum rate allowed by law, post-judgment interest, and for such other and further relief, both at law and in equity, to which he may show himself to be justly entitled.

Respectfully Submitted,

**Law Office of Jeffrey E. Dahl**
The Commerce Building
314 E. Commerce, Suite 300
San Antonio, Texas  78205
(210) 527-0900 (Telephone)
(210) 527-0901 (Facsimile)
jdahl@erisaattorneyintexas.com

By: _/s/ Jeffrey E. Dahl_
**Jeffrey E. Dahl**
**State Bar No. 05310900**
**Fed. ID No. 31492**
**Attorney for Plaintiff James Alan Barnes**